UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

EDDY LEON GRADDY,

    Plaintiff,

v.

Case No.: 8)2cv 1882 24€DJ

THE CITY OF TAMPA, OFFICER
CHAD SMITH, OFFICER CHRISTOPHER
CORNELIUS and OFFICER ROBERT
BARRETT,

    Defendant.
_____/

## COMPLAINT

**COMES NOW** the Plaintiff, EDDY LEON and hereby sues the Defendants, **THE CITY OF TAMPA, OFFICER CHAD SMITH, OFFICER CHRISTOPHER CORNELIUS and OFFICER ROBERT BARRETT,** for damages arising out of a beating, unlawful arrest, and other unconstitutional policies and actions, and for common law claims arising out of Mr. Graddy's arrest on November 6, 2008 and as grounds therefore states:

### JURISDICTION

1. Plaintiff brings this action against Defendants to redress the deprivation of rights secured Plaintiff by the Fourth and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983 and the common law.

2. Plaintiff is a citizen of Florida.

3. Each defendant is, upon information and belief, a citizen of Florida.

4. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and 42 U.S.C. § 1983.



5. Plaintiff also invokes supplemental jurisdiction of this Court over Plaintiff's state claims against Defendants for common law violations pursuant to 28 U.S.C. § 1367 as the common law claims form part of the same case or controversy.

6. These claims are brought pursuant to Florida Statutes §768.28.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## PARTIES

8. Plaintiff is a resident of Tampa, Florida.

9. Defendant City of Tampa operates and governs the Tampa Police Department pursuant to the laws of Florida.

10. The City of Tampa is a sovereign entity of the State of Florida.

11. Unless otherwise specified, Defendant Officers Christopher Cornelius, Chad Smith and Robert Barrett are sued in their official capacity. At all pertinent times, Defendant Officers were employed by the City of Tampa through the Tampa Police Department.

12. Defendants were placed on notice on November 12, 2010, pursuant to F.S. §768.28(6)(a), of the intention of Eddie Leon Graddy to file a claim for damages arising out of this incident, including but not limited to, damages for negligence, unlawful arrest and the injuries he sustained as a result of the above described incident. To date, no answer has been received by Plaintiff and no compensation has been offered in response to this claim.

## FACTS

13. On November 6, 2008, Mr. Graddy was engaged in conversation in front of a business located at 1806 North Nebraska Avenue in Tampa, Florida. While at that location he was confronted by City of Tampa Police Officers Chad Smith, Robert Barrett, and Christopher Cornelius.

14. The Officers asked Mr. Graddy for identification, which he provided to them. The Officers did not return Mr. Graddy's identification. The Officers proceeded to interrogate Mr. Grady. During the questioning, Mr. Graddy asked if he was under arrest. The Officers advised that he was not.

15. The Officers continued to question Mr. Graddy, and informed Mr. Graddy that he would be searched with or without his consent. Although Mr. Graddy initially believed the questioning to be routine, the Officers' words and body language were becoming more aggressive over the course of the interrogation.

16. Officer Barrett, in particular, was well known within Mr. Graddy's community under the name "Batman." Officer Barrett was known by Mr. Graddy to have a reputation for being aggressive and harassing African Americans.

17. In addition, the City of Tampa's police officers were known to Mr. Graddy and within the community to search and detain persons without cause or permission, to use unjustified force against residents of the community, and to manufacture justifications for search or arrest.

18. During the questioning, Mr. Graddy observed Officer Barrett reaching toward his gun belt. Fearing violence against his person, Mr. Graddy began running

northbound along Nebraska Avenue and then west along Oak Street. The Officers pursued Mr. Graddy.

19. During the chase, and while Mr. Graddy's back was turned toward the Officers, Officer Cornelius deployed a Taser striking Mr. Graddy and causing him to fall to the ground.

20. Subsequently, an independent witness observed several police officers behaving aggressively and surrounding Mr. Graddy's prone body. At that time, the witness was told by an officer to leave the scene.

21. Approximately five to ten minutes after Mr. Graddy fled the scene at 1806 North Nebraska Avenue, he was observed by witnesses being brought, handcuffed, back to the scene by the Officers. At that time, witnesses observed that Mr. Graddy has suffered multiple injuries, including a bleeding face, forehead, and arm, and that Mr. Graddy was complaining of arm pain.

22. After Mr. Graddy was returned to the scene, emergency medical personnel had been summoned by one or more onlookers and arrived at the scene to treat Mr. Graddy. However, the emergency medical personnel were told by Officer Barrett that Mr. Graddy "was ok." In addition, the arresting officers failed or refused to remove Mr. Graddy's handcuffs to allow the emergency medical personnel to inspect Mr. Graddy's arm.

23. Based upon Officer Barrett's representation that Mr. Graddy did not need treatment, the emergency medical personnel declined to provide medical care for Mr. Graddy and did not transport him for medical treatment.

24. At that time, and while his hands were still restrained behind his back, Mr. Graddy was placed in the back seat of a police cruiser.

25. Both prior to and subsequent to being handcuffed, Mr. Graddy informed the arresting officers that his arm was broken. In addition, both prior to and subsequent to being placed in the cruiser, Mr. Graddy asked the arresting officers to take him to a hospital for treatment.

26. Mr. Graddy was arrested at approximately 4:52 pm on November 6, 2008. At that time, he was not taken to the hospital for treatment of his injuries. With his hands still restrained behind his back, Mr. Graddy began screaming in pain and continued asking for medical treatment. Instead, Officers Cornelius and Smith drove Mr. Graddy around in a cruiser for several hours before taking him to the Orient Road Jail.

27. The Orient Road Jail is less than seven miles from the location of the above-described arrest and detention.

28. Upon arrival at Orient Road Jail, it was determined that Mr. Graddy was in need of medical treatment and that his arm was severely broken, and he was then taken to Tampa General Hospital. He was admitted to the hospital at 12:03 am, and was booked at Orient Road Jail at 4:20 am on November 7.

29. Subsequent medical treatment determined that Mr. Graddy suffered a fractured radius with a dislocated ulna at the time of his arrest. Mr. Graddy continues to suffer from swelling and restriction of mobility in his wrist. He suffered abrasions to the face, body and arm. He suffered and continues to suffer from headaches, neck, chest,

hip and back pain as a result of the injuries he sustained at the hands of the Officers at the time of arrest.

30. Mr. Graddy's injuries were suffered from deployment of the Taser and from his subsequent fall to the ground, as well as from his treatment by the Officers both while Mr. Graddy was lying upon the ground and while he was being taken back to the scene of the initial questioning.

31. The incident is documented by Tampa Police Department Report #08-673176.

32. Mr. Graddy was prosecuted under Hillsborough County Circuit Court Case No. 2008-CF-021845. Mr. Graddy was charged with (1) possession with intent to deliver a controlled substance within 1,000 feet of a church, F.S. §893.13 (1) (e) 1; (2) possession of drug paraphernalia, F.S. §893.147; (3) obstructing or opposing an officer without violence, F.S. §843.02.

33. On March 16, 2009 the Court granted Mr. Graddy's Motion to Suppress Evidence and dismissed the case against him. The Court found that the police officers lacked a lawful reason for the stop and frisk and that Mr. Graddy was free to terminate the encounter at any time.

34. The Court further found that Mr. Graddy terminated the encounter by running from the police and there was no probable cause for the police to arrest Mr. Graddy or utilize the Taser to stop him.

35. At all times pertinent to these allegations, Plaintiff was unarmed and did not pose a threat of death or grievous bodily injury to Defendants.

36. At no time did the Defendant Officers have probable cause to believe Plaintiff had committed or was committing a crime.

37. At no time did the Defendant Officers have or seek to obtain a warrant for the arrest of or authorizing them to search the person of Mr. Graddy.

38. Records in the Plaintiff's possession indicate that Officer Cornelius has been accused of using excessive force at least five times while working for the City of Tampa, including the alleged November 6, 2008 incident. At least two of these instances involved the use of a Taser. In addition, at least two of these instances occurred while Officer Cornelius was in the company of Officer Smith.

39. In each case above, Officer Cornelius was cleared of using excessive force after brief and summary investigations. These investigations were conducted in a manner such that it was extremely unlikely that Officer Cornelius would be held accountable for any use of excessive force.

40. In addition, the City of Tampa failed to document or maintain records in Officer Smith's file for at least one incident which gave rise to an allegation of excessive force against the arresting officers, including Officer Smith.

41. Upon information and belief, the City of Tampa has maintained a practice of searching residents of minority or poor neighborhoods without basis or justification.

42. Upon information and belief, the City of Tampa has maintained a system of review of police conduct so untimely and cursory as to be ineffective and to permit and tolerate illegal searches and seizures by police officers. As a result, the City of Tampa permitted and tolerated illegal searches and seizures by police officers of the City of Tampa.

43. Upon information and belief, the City of Tampa has also maintained an ineffective and insufficient system of training that permitted and tolerated illegal searches and seizures by police officers.

44. The acts, omissions, systemic flaws, policies, and customs of the City of Tampa caused police officers of the City of Tampa to believe that illegal searches and seizures would not be aggressively, honestly, and properly investigated. As a result, City of Tampa officers are more likely to illegally search Plaintiff and others.

45. This practice was sufficiently known and approved by city officials as to constitute unofficial authorization for the City of Tampa to fail or refuse to investigate allegations of illegal search and seizure.

46. Upon information and belief, at all times pertinent, the City of Tampa permitted and tolerated a pattern and practice of unreasonable use of force by police officers of the City of Tampa.

47. Upon information and belief, the City of Tampa has maintained a system of review of police conduct so untimely and cursory as to be ineffective and to permit and tolerate the unreasonable and excessive use of force by police officers.

48. Upon information and belief, the City of Tampa has maintained an ineffective and insufficient system of training that permitted and tolerated the unreasonable and excessive use of force by police officers.

49. The acts, omissions, systemic flaws, policies, and customs of the City of Tampa caused police officers of the City of Tampa to believe that the excessive and unreasonable use of force would not be aggressively, honestly, and properly

investigated. As a result, City of Tampa officers are more likely to use excessive or unreasonable force against Plaintiff and others.

50. This practice was sufficiently known and approved by city officials as to constitute unofficial authorization for the City of Tampa to fail or refuse to investigate allegations of excessive or unreasonable force.

### COUNT I: 42 U.S.C. §1983 UNLAWFUL SEIZURE OF A CITIZEN CLAIM AGAINST THE CITY OF TAMPA

51. Plaintiff incorporates by reference paragraphs 1 through 50.

52. Mr. Graddy was deprived of his Fourth Amendment rights in the execution or implementation of the City of Tampa's custom of detaining, searching and arresting residents of minority or poor neighborhoods without basis or justification, and specifically in the absence of probable cause or reasonable suspicion. This custom existed for a sufficient time and was sufficiently widespread as to have the force of law.

53. Mr. Graddy was deprived of his Fourth Amendment rights in accordance with a pattern of persistent practice sufficiently known and approved by City of Tampa officials as to constitute unofficial authorization.

54. Mr. Graddy was deprived of his Fourth Amendment rights under color of state law, including specifically Fla. Stat. §§ 893.13, 893.147, and 843.02.

55. Mr. Graddy was detained, searched and arrested without probable cause or reasonable suspicion.

56. As a result, Plaintiff was unlawfully restrained and detained against his will. This detention began the moment the Defendant Officers first encountered and began issuing orders to Mr. Graddy.

57. As a direct and proximate result of the acts and omissions of the City of Tampa, Plaintiff continues to feel pain from the injuries caused by Defendant Officers, was forced to suffer pain and mental cruelty, was deprived of physical liberty, and was forced to incur medical and legal expenses. In addition, Plaintiff has suffered humiliation and emotional distress as a consequence of being publicly attacked and arrested on criminal charges.

WHEREFORE, the Plaintiff respectfully requests this court enter judgment in favor of the Plaintiffs and award compensatory damages, the costs incurred in this matter, and any further relief this court deems just.

## COUNT II: 42 U.S.C. §1983 UNLAWFUL SEIZURE OF A CITIZEN CLAIM AGAINST OFFICER CORNELIUS, OFFICER SMITH AND OFFICER BARRETT, IN THEIR INDIVIDUAL CAPACITIES

58. Plaintiff incorporates by reference paragraphs 1 through 50.

59. Defendants, Officer Cornelius, Officer Smith, and Officer Barrett, deprived the Plaintiff of the right secured by the Fourth Amendment to be free from unreasonable detention, search and arrest, as applied to the States through the Fourteenth Amendment.

60. Mr. Graddy was deprived of his Fourth Amendment rights under color of state law, including specifically Fla. Stat. §§ 893.13, 893.147, and 843.02.

61. Mr. Graddy was detained, searched and arrested without probable cause or reasonable suspicion.

62. Defendants Christopher Cornelius, Chad Smith, and Robert Barrett deprived Plaintiff of the right secured by the Fourth Amendment to be free from

detention without reasonable suspicion, as applied to the States through the Fourteenth Amendment.

63. Defendants Christopher Cornelius, Chad Smith, and Robert Barrett deprived Plaintiff of the right secured by the Fourth Amendment to be free from arrest without probable cause, as applied to the States through the Fourteenth Amendment.

64. As a result, Plaintiff was unlawfully restrained and detained against his will. This detention began the moment the Defendant Officers first encountered and began issuing orders to Mr. Graddy.

65. As a direct and proximate result of the acts and omissions of the Defendant Officers, Plaintiff continues to feel pain from the injuries caused by Defendant Officers, was forced to suffer pain and mental cruelty, was deprived of physical liberty, and was forced to incur medical and legal expenses. In addition, Plaintiff has suffered humiliation and emotional distress as a consequence of being publicly attacked and arrested on criminal charges.

WHEREFORE, the Plaintiff respectfully requests this court enter judgment in favor of the Plaintiffs and award compensatory damages, the costs incurred in this matter, and any further relief this court deems just.

### COUNT III: 42 U.S.C. §1983 EXCESSIVE FORCE CLAIM AGAINST OFFICERS CHRISTOPHER CORNELIUS, CHAD SMITH AND ROBERT BARRETT IN THEIR INDIVIDUAL CAPACITIES

66. Plaintiff incorporates by reference paragraphs 1 through 50.

67. Defendants Christopher Cornelius, Chad Smith, and Robert Barrett deprived Plaintiff of the right secured by the Fourth Amendment to be free from

excessive force in the course of an arrest, as applied to the States through the Fourteenth Amendment.

68. Mr. Graddy was deprived of his Fourth Amendment rights under color of state law, including specifically Fla. Stat. §§ 893.13, 893.147, and 843.02.

69. The arresting officers pursued, searched, detained and arrested Mr. Graddy without actual or arguable probable cause.

70. The arresting officers used unreasonable force in the course of detaining and arresting Mr. Graddy.

71. As a direct and proximate result of the acts and omissions of Defendants, Plaintiff continues to feel pain from the injuries caused by Defendant Officers, was forced to suffer pain and mental cruelty, was deprived of physical liberty, and was forced to incur medical and legal expenses. In addition, Plaintiff has suffered humiliation and emotional distress as a consequence of being publicly attacked and arrested on criminal charges.

WHEREFORE, the Plaintiff respectfully requests this court enter judgment in favor of the Plaintiffs and award compensatory damages, the costs incurred in this matter, and any further relief this court deems just.

### COUNT IV: 42 U.S.C. §1983 EXCESSIVE FORCE CLAIM AGAINST THE CITY OF TAMPA

72. Plaintiff incorporates by reference paragraphs 1 through 50.

73. Defendants Christopher Cornelius, Chad Smith, and Robert Barrett deprived Plaintiff of the right secured by the Fourth Amendment to be free from excessive force in the course of an arrest, as applied to the States through the Fourteenth Amendment.

74. Mr. Graddy was deprived of his Fourth Amendment rights under color of state law, including specifically Fla. Stat. §§ 893.13, 893.147, and 843.02.

75. The arresting officers pursued, searched, detained and arrested Mr. Graddy without actual or arguable probable cause.

76. The arresting officers used unreasonable force in the course of detaining and arresting Mr. Graddy.

77. Upon information and belief, at all times pertinent, the City of Tampa permitted and tolerated a pattern and practice of unreasonable use of force by police officers of the City of Tampa.

78. Upon information and belief, the City of Tampa has maintained a system of review of police conduct so untimely and cursory as to be ineffective and to permit and tolerate the unreasonable and excessive use of force by police officers.

79. Upon information and belief, the City of Tampa has maintained an ineffective and insufficient system of training that permitted and tolerated the unreasonable and excessive use of force by police officers.

80. The acts, omissions, systemic flaws, policies, and customs of the City of Tampa caused police officers of the City of Tampa to believe that the excessive and unreasonable use of force would not be aggressively, honestly, and properly investigated. As a result, City of Tampa officers are more likely to use excessive or unreasonable force against Plaintiff and others.

81. This practice was sufficiently known and approved by city officials as to constitute unofficial authorization for the City of Tampa to fail or refuse to investigate allegations of excessive or unreasonable force.

82. As a direct and proximate result of the acts and omissions of the City of Tampa, Plaintiff continues to feel pain from the injuries caused by Defendant Officers, was forced to suffer pain and mental cruelty, was deprived of physical liberty, and was forced to incur medical and legal expenses. In addition, Plaintiff has suffered humiliation and emotional distress as a consequence of being publicly attacked and arrested on criminal charges.

WHEREFORE, the Plaintiff respectfully requests this court enter judgment in favor of the Plaintiffs and award compensatory damages, the costs incurred in this matter, and any further relief this court deems just.

## COUNT V: DENIAL OF MEDICAL TREATMENT CLAIM AGAINST OFFICERS CHRISTOPHER CORNELIUS, CHAD SMITH AND ROBERT BARRETT IN THEIR INDIVIDUAL CAPACITIES

83. Plaintiff incorporates by reference paragraphs 1 through 50.

84. Defendants Christopher Cornelius, Chad Smith, and Robert Barrett deprived Plaintiff of the Fourth Amendment right to be free from unreasonable seizure, as applied to the States through the Fourteenth Amendment.

85. Mr. Graddy was deprived of his Fourth and Fourteenth Amendment rights under color of state law, including specifically Fla. Stat. §§ 893.13, 893.147, and 843.02.

86. The Plaintiff was entitled to medical treatment upon his arrest and confinement and Defendants, Officer Cornelius, Officer Smith, and Officer Barrett, unreasonably failed to provide such medical treatment for an injured arrestee in their custody.

87. Specifically, Officer Barrett represented to the paramedics at the scene of detention and arrest that the Plaintiff "was ok" and did not need medical treatment,

despite having knowledge of the Plaintiff's injuries and of the Plaintiff's complaints of such injuries. In addition, the Defendant Officers failed and refused to remove the Plaintiff's handcuffs at the scene of the Plaintiff's arrest to provide paramedics with access to the Plaintiff's injured arm.

88.  Subsequently, and despite the Plaintiff's cries of pain and complaints of a broken arm, Officer Cornelius and Officer Smith transported the Plaintiff in the back of a cruiser for at least three hours before taking him to Orient Road Jail for booking.

89.  Upon the Plaintiff's eventual arrival at Orient Road Jail, the facility would not accept him because of his obvious injuries, and at that time the Plaintiff was taken to Tampa General Hospital.

90.  As a proximate result of this unreasonable denial of medical treatment by Defendants, Officer Cornelius, Officer Smith, and Officer Barrett, Plaintiff has sustained permanent injuries and complications to his existing injuries, and has incurred medical bills and other expenses. These injuries have caused and will continue to cause Plaintiff great pain and suffering, both mental and physical.

WHEREFORE, the Plaintiff respectfully requests this court enter judgment in favor of the Plaintiffs and award compensatory damages, the costs incurred in this matter, and any further relief this court deems just.

### COUNT VI: ASSAULT AND BATTERY CLAIM
### AGAINST THE CITY OF TAMPA

91.  Plaintiff incorporates by reference paragraphs 1 through 50.

92.  Defendant, the City of Tampa, was placed on notice of this claim on November 12, 2010, pursuant to F.S. §768.28(6)(a).

93. The use of non-deadly force and verbal abuse by the Defendant Officers, acting in their official capacity, when the Defendant Officers had no lawful authority to arrest Plaintiff, when Plaintiff was unarmed and did not pose a threat of death or grievous bodily injury to Defendants or others, was without justification or provocation, was excessive, and constitutes assault and battery for which the City of Tampa is liable.

94. The arresting officers pursued, searched, detained and arrested Mr. Graddy without actual or arguable probable cause.

95. The arresting officers used unreasonable force in the course of detaining and arresting Mr. Graddy, such that their actions constituted assault and battery.

96. The Defendant Officers inflicted harmful or offensive contact upon the Plaintiff with the intent to cause such contact.

97. As a proximate result of the assault and battery committed by Officer Cornelius, Officer Smith, and Officer Barrett, Plaintiff has sustained permanent injuries and has incurred medical bills and other expenses. These injuries have caused and will continue to cause Plaintiff great pain and suffering, both mental and physical.

WHEREFORE, the Plaintiff respectfully requests this court enter judgment in favor of the Plaintiffs and award compensatory damages, the costs incurred in this matter, and any further relief this court deems just.

### COUNT VII: NEGLIGENCE CLAIM
### AGAINST THE CITY OF TAMPA

98. Plaintiff incorporates by reference paragraphs 1 through 50.

99. Defendant, the City of Tampa, was placed on notice of this claim on November 12, 2010, pursuant to F.S. §768.28(6)(a).

100. The City of Tampa had a duty to provide or obtain adequate and appropriate medical care for the Plaintiff at all times during the Plaintiff's detention and arrest.

101. The City of Tampa, through Officer Cornelius, Officer Smith, and Officer Barrett, breached this duty by failing to provide or obtain medical care for the Plaintiff despite the Plaintiff's obvious injuries.

102. Specifically, Officer Barrett represented to the paramedics at the scene of detention and arrest that the Plaintiff "was ok" and did not need medical treatment, despite having knowledge of the Plaintiff's injuries and of the Plaintiff's complaints of such injuries. In addition, the Defendant Officers failed and refused to remove the Plaintiff's handcuffs at the scene of the Plaintiff's arrest to provide paramedics with access to the Plaintiff's injured arm.

103. Subsequently, and despite the Plaintiff's cries of pain and complaints of a broken arm, Officer Cornelius and Officer Smith transported the Plaintiff in the back of a cruiser for at least three hours before taking him to Orient Road Jail for booking.

104. Upon the Plaintiff's eventual arrival at Orient Road Jail, the facility would not accept him because of his obvious injuries, and at that time the Plaintiff was taken to Tampa General Hospital.

105. As a proximate result of the assault and battery committed by Defendants, Officer Cornelius, Officer Smith, and Officer Barrett, Plaintiff has sustained permanent injuries and has incurred medical bills and other expenses. These injuries have caused and will continue to cause Plaintiff great pain and suffering, both mental and physical.

WHEREFORE, the Plaintiff respectfully requests this court enter judgment in favor of the Plaintiffs and award compensatory damages, the costs incurred in this matter, and any further relief this court deems just.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury.

DATED: August 20, 2012

Respectfully submitted,

BANKER LOPEZ GASSLER P.A.
501 E. Kennedy Blvd., Suite 1500
Tampa, FL 33602
(813) 221-1500
Fax No: (813) 222-3066
jowens@bankerlopez.com
graines@bankerlopez.com
Attorneys for Plaintiff

By: /s/ John Owens
John Owens
Florida Bar No. 0062200
Garett T. Raines
Florida Bar No: 0037178